## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOEL GOLEMAN                :        CIVIL ACTION

          v.                  :

YORK INTERNATIONAL CORP.      :     NO. 11-1328

### MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**                                               **August 3, 2011**

## I.     Introduction

Plaintiff Joel Goleman ("Goleman" or "Plaintiff") filed this putative class action against Defendant York International Corporation ("York" or "Defendant") on behalf of himself and all others similarly situated who purchased Coleman DGU Series Furnaces (the "Furnaces") containing an original "Hot Surface Igniter" ("HSI") component.  Plaintiff alleges that Defendant defectively designed the original HSI and failed to notify the proposed class when Defendant designed an upgraded HSI.  Specifically, Plaintiff's Complaint alleges violations of many state consumer protection laws (Count I), the Magnuson-Moss Act, 15 U.S.C. § 2301, et seq. (Count II), and state common law, including breach of express warranty (Count III), breach of implied warranty (Count IV), unjust enrichment (Count V), equitable relief (Count VI), and breach of duty of good faith and fair dealing (Count VII).  Plaintiff has conceded that Counts II, III, and IV are barred by the statute of limitations.

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 5) pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons,

1

Defendant's Motion to Dismiss is granted with prejudice as to Counts II-V and VII, and without prejudice as to Counts I and VI.

## II.     Factual and Procedural Background

According to the Complaint, in October 2000, Plaintiff, a citizen and resident of Pennsylvania, purchased and installed a Coleman Gas-Fired, High Efficiency Upflow Condensing DGU Series Furnace (the "Furnace"), model number DGU10014UA, serial number EBEM045566.  Compl. ¶¶ 7, 21.  Defendant is allegedly the designer, manufacturer, marketer, distributor and seller of the Furnaces.  Compl. ¶¶ 8, 20.  The Furnace contained an ignition source called the Hot Surface Igniter ("HSI").  Compl. ¶¶ 10, 12.  The HSI as originally designed did not have a protective covering to prevent condensation build-up, which can cause the HSI to crack and prevent it from igniting the fuel in the Furnace to deliver heated air.  Compl. ¶¶ 12-13.  Plaintiff alleges that the Furnace came with a 20-year limited warranty from the original installation date.  Compl. ¶ 21.

Defendant filed with its Motion to Dismiss the affidavit of David L. Negrey (ECF No. 5, Ex. 1), to which it attached the Limited Warranty and Gas Furnace Heat Exchange Warranty (the "Limited Warranty") for the Furnace based on the serial number alleged in the Complaint.  (Ex. A to Negrey Aff.)  The Limited Warranty states that "Unitary Products Group (UPG) warrants this product to be free from defects in factory workmanship and material under normal use and service and will, at its option, repair or replace any parts that prove to have such defects <u>within a period of one (1) year</u> from the date of product installation."  <u>Id.</u> (emphasis added).[1]

---

[1]  The relationship of UPG to York is unclear.  Although the Limited Warranty states that UPG provides the warranty, the copyright on the Limited Warranty is "York International Corporation

In 2003, Defendant designed an upgraded HSI with a protective casing to prevent condensation and dirt or dust buildup, which is compatible with the Furnaces.  Compl. ¶ 14. Plaintiff alleges that Defendant did not advise owners of the Furnaces and HVAC technicians who service the Furnaces of the availability of the upgraded HSI, and failed to disclose problems with the original HSI.  Compl. ¶¶ 15-17.   Plaintiff further alleges that he lacked knowledge of the defect.  Compl. ¶ 18.

Sometime before January 2005, Plaintiff's Furnace stopped working.  Compl. ¶ 22.  On an unspecified date, an HVAC technician repaired the Furnace and informed Plaintiff that the HSI had failed.  Compl. ¶ 22.  Five years later, on February 24, 2010, an HVAC technician who was called to repair the Furnace replaced the HSI with another HSI of the "original design."[2] Compl. ¶ 23.  One week later, this HSI failed, and on March 2, 2010, the HVAC technician "again installed the original design Hot Surface Igniter."  Compl. ¶ 24.  Approximately three days later, the furnace was not working again, and the HVAC technician installed an upgraded HSI.  Compl. ¶ 25.  Plaintiff paid the HVAC technician $120 for the upgraded HSI and $275 for the labor associated with the three visits.  Compl. ¶ 25.  Plaintiff has had no further problems with the Furnace.  Compl. ¶ 26.

On February 25, 2011, Plaintiff filed the Complaint against Defendant.  (ECF No. 1) Defendant filed its Motion to Dismiss on April 19, 2011.  (ECF No. 5)  Plaintiff responded on May 9, 2011. (ECF No. 6)  Defendant replied on May 16, 2011.  (ECF No. 7)

---

1995."  Plaintiff alleged that York is a subsidiary of Johnson Controls.  Compl. ¶ 8.

[2] Plaintiff alleges no facts from the period between January 2005 and February 2010.

III.    **The Parties' Contentions**

Defendant raises five arguments in its motion to dismiss.  First, Defendant contends that the Magnuson-Moss Act (Count II), breach of express warranty (Count III), and breach of implied warranty (Count IV) claims are barred both by a four-year statute of limitations, and because the alleged design defect arose after the expiration of the Limited Warranty.  Def.'s Mem. Supp. Mot. Dismiss 4-7.  Plaintiff concedes that his warranty claims are barred.  Pl.'s Mem. Law Opp'n 4.

Second, Defendant contends Plaintiff's claim for unjust enrichment (Count V) fails, because it is barred by a four-year statute of limitations, which began to run when Plaintiff purchased the Furnace in October 2000.  Def.'s Mem. Supp. Mot. Dismiss 7-8.  Plaintiff responds that the statute of limitations was tolled by the discovery rule and fraudulent concealment doctrine.  Pl.'s Mem. Law Opp'n 4-5.   Defendant also contends that the unjust enrichment claim fails as a matter of law because the Limited Warranty is an express contract governing the parties' relationship.  Id. at 8-9

Third, Defendant contends Plaintiff's claim for breach of the duty of good faith and fair dealing (Count VII) fails, because Plaintiff cannot specify a contract provision under which Defendant breached any alleged duty, and because "there is no such thing as a claim for breach of a free-standing duty of good faith and fair dealing under these circumstances."  Def.'s Mem. Supp. Mot. Dismiss 9.  Plaintiff responds that "every contract imposes an obligation of good faith in its performance or enforcement," and that "[h]onesty in the previous transactions (the prior repairs) would have mandated that Plaintiff be advised of the redesign of the [HSI] . . . ."  Pl.'s Mem. Law Opp'n 6-7.

Fourth, Defendant contends that Plaintiff's claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count I) fails, because Plaintiff did not plead facts to support his allegations as required by Federal Rule of Civil Procedure 9(b).  Def.'s Mem. Supp. Mot. Dismiss 9-11.  Plaintiff responds that the Rule 9(b) heightened pleading standard does not apply to allegations of deceptive conduct under the UTPCPL.  Pl.'s Mem. Law Opp'n 7-8.  Alternatively, Defendant asserts that Plaintiff has not pled the elements of a UTPCPL claim. Def.'s Reply Mem. Supp. Mot. Dismiss 7-8.

Finally, Defendant contends that Plaintiff's claim for equitable relief (Count VI) fails, because all of Plaintiff's substantive claims should be dismissed, and there are adequate remedies at law.  Plaintiff responds that equitable relief is warranted given that "Plaintiff has no adequate redress at law" and that "[t]he equitable relief being sought by Plaintiff" is information regarding the redesigned HSI, which has no exact damage calculation."  Pl.'s Mem. Law Opp'n 8-9.

## IV.    Legal Standard

### A.    Jurisdiction

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (Counts I, III-VII) and 28 U.S.C. § 1331 (Count II).  Pursuant to 28 U.S.C. § 1332(d), Plaintiff alleges that the aggregate claims of the class exceed $5,000,000, exclusive of interest and costs, and that all members of the putative class are citizens of different states than Defendant.  28 U.S.C. § 1332(d)(2).

Plaintiff Goleman is a citizen of Pennsylvania.  Pursuant to 28 U.S.C. § 1332(c)(1), a corporation is a citizen of its state of incorporation and of the state where it has its principal place of business.  Defendant York is a citizen of Wisconsin, as it is alleged to be a subsidiary of

5

Johnson Controls, a Wisconsin company with its principal place of business in Milwaukee, Wisconsin.

**B.      Standard of Review for a Rule 12(b)(6) Motion to Dismiss**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the non-moving party.  Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008).  The Third Circuit has addressed the effect of the Supreme Court's most recent pleading-standard decisions, Twombly v. Bell Atlantic Corp., 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  See Phillips, 515 F.3d at 233–34.  Twombly established a three-pronged approach for all civil actions: first, the court must identify the elements the plaintiff must plead to state a claim; second, the court asks whether the complaint sets forth factual allegations or conclusory statements; third, if the complaint sets forth factual allegations, the court must assume their veracity and draw reasonable inferences in favor of the non-moving party, but then must determine whether the factual allegations plausibly give rise to an entitlement to relief.  Santiago v. Warminster Twp., 629 F.3d 121, 130 & n.7 (3d Cir. 2010); see Iqbal, 129 S. Ct. at 1950, 1953.  For the second step, the court should separate the factual and legal elements of the claims, accepting the well-pleaded facts as true and disregarding any legal conclusions.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).

To state a claim, a plaintiff must allege circumstances with enough factual matter to suggest the required claim exists.  Phillips, 515 F.3d at 234.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims.  Iqbal,

129 S. Ct. at 1949; <u>Phillips</u>, 515 F.3d at 234.  Pleading standards are not the same as standards of

proof.  <u>See</u> <u>Fowler</u>, 578 F.3d at 213–14.  Whether a claim is plausible depends on the context, i.e.

the nature of the claim asserted.  <u>Phillips</u>, 515 F.3d at 233.  A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is

liable for the misconduct alleged.  <u>Gelman v. State Farm Mut. Auto. Ins. Co.</u>, 583 F.3d 187, 190

(3d Cir. 2009).

## V.   Discussion

### A.   Counts II, III, IV: Federal and State Warranty Claims

Both Defendant and Plaintiff agree that Plaintiff's warranty claims under state law and

the Magnuson-Moss Act are barred by the statute of limitations.  Def.'s Mem. Supp. Mot.

Dismiss 4-6; Pl.'s Mem. Law Opp'n 4 ("Plaintiff concedes that his warranty claims are barred by

the statute of limitations and dismisses same.").  Therefore, Counts II, III, and IV will be

dismissed with prejudice.

### B.   Count V: Unjust Enrichment

#### 1.   Statute of Limitations

Plaintiff's unjust enrichment claim (Count V) is also time-barred by the statute of

limitations.  Pennsylvania law imposes a four-year statute of limitations on claims of unjust

enrichment.  42 Pa. Cons. Stat. Ann. § 5525(a)(4).  "Whether a complaint is timely filed within

the limitations period is a matter of law for the court to determine."  <u>Sevast v. Kakouras</u>, 915

A.2d 1147, 1153 (Pa. 2007) (quoting <u>Crouse v. Cyclops Indus.</u>, 745 A.2d 606, 611 (Pa. 2000)).

An unjust enrichment claim "accrues when the defendant 'receives and retains benefits.'"  <u>Harry</u>

<u>Miller Corp. v. Mancuso Chems., Ltd.</u>, 469 F. Supp. 2d 303, 319 (E.D. Pa. 2007) (Brody, J.)

(quoting Konidaris v. Portnoff Law Assocs., Ltd., 884 A.2d 348, 355 (Pa. Cmwlth. Ct. 2005),

rev'd in part, 953 A.2d 1231 (Pa. 2008)).

Here, Plaintiff alleges that he purchased the Furnace from Defendant in October 2000.

Compl. ¶ 10.  Thus, the statutory period began to run in October 2000, when Defendant received

and retained the benefit of the sale, and ended in October 2004.  However, Plaintiff asserts in his

response brief that the "unjust enrichment occurred at the time that York redesigned the Hot

Surface Igniter some time in 2003 and failed to advise Class Members that the original design

was defective."  Pl.'s Mem. Law Opp'n 5.  Even if Plaintiff were correct that his claim accrued in

2003, the four-year statute of limitations still forecloses Plaintiff's claim, which he filed in

February 2011.

Plaintiff contends that the statute of limitations was tolled until he discovered the defect,

and cites Harry Miller for support.  In Harry Miller, the plaintiff chemical company brought

claims against a competitor company, including for unjust enrichment by use of the plaintiff's

trade secrets.  Harry Miller, 469 F. Supp. 2d at 319.  The plaintiff invoked the same two tolling

doctrines that Plaintiff invokes here--the "discovery rule" and the doctrine of fraudulent

concealment--to argue that the statute of limitations did not begin running until the plaintiff

learned of the competitor's conduct.  Id. at 312.  Each will be considered separately.

The discovery rule "triggers the tolling of the statute of limitations when the plaintiff is

'unable, despite the exercise of reasonable diligence, to discover the injury or its cause.'"  Id.

(quoting Mest v. Cabot Corp., 449 F.3d 502, 510 (3d Cir. 2006)).  The discovery rule under

Pennsylvania law applies "'in only the most limited of circumstances.'"  Id. at 313 (quoting

Dalrymple v. Brown, 701 A.2d 164, 171 (Pa. 1997)).  To successfully toll the statute, the plaintiff

8

"bears the burden of demonstrating reasonable diligence in determining the existence of injury and cause of injury." Id. (citing Swietlowich v. County of Bucks, 610 F.2d 1157, 1162 (3d Cir. 1979)).

The fraudulent concealment doctrine applies where the defendant "committed an 'affirmative and independent act of concealment that would divert or mislead the plaintiff,'" which "'causes the plaintiff to relax his vigilance or deviate from the right of inquiry.'" Id. at 316 (quoting Mest, 449 F.3d at 516, 517).

In Harry Miller, the court rejected the plaintiff's argument that the discovery rule applied, because the plaintiff had not shown reasonable diligence in ascertaining the cause of its injury. Id. at 314.  Rather, the plaintiff  "remained content with its own ignorance," and "developed no serious strategy" to investigate the problem.  Id. at 314-15.  Likewise, the fraudulent concealment doctrine did not apply because the plaintiff lacked evidence that the defendant "communicated directly with Miller or took any affirmative steps that would mislead Miller," and "no evidence that anyone at [the defendant company] ever spoke to anyone at Miller. . . or had any opportunity to make misleading remarks."  Id. at 316.

Judge Brody contrasted the facts of Harry Miller with the facts of Mest v. Cabot Corp., in which the plaintiffs successfully argued the statute of limitations was tolled.  In Mest, farmers who alleged that factory emissions made their cows ill demonstrated reasonable diligence in discovering the cause of the injury by "swiftly hir[ing] agricultural experts, contact[ing] environmental regulatory agencies, and retain[ing] university scientists" when they suspected their cows were sick.  Id. at 314 (citing Mest, 449 F.3d at 508-09).  Moreover, the defendant factory acted affirmatively by "assur[ing] a subset of the plaintiff farmers that the factory was not

causing the cows' symptoms." Id. at 316 (citing Mest, 449 F.3d at 516).  Therefore, the doctrine

of fraudulent concealment tolled the statute of limitations as to the farmers to whom the factory

communicated this misinformation, but not as to farmers who had not communicated directly

with the factory owner. Id. at 316 (citing Mest, 449 F.3d at 516-17).

Here, Plaintiff has not alleged any facts to support application of the discovery rule or the

doctrine of fraudulent concealment.  Indeed, Plaintiff's Complaint pleads no facts between 2005

and 2010.  Plaintiff does not allege that he took steps to discover even the "existence of injury,"

let alone the "cause of injury," as required under Pennsylvania law. See Harry Miller, 469 F.

Supp. 2d at 313 (emphasis added).  Rather, Plaintiff remained ignorant of the existence of any

problem with his Furnace for years and developed no strategy to determine the cause of the

problem.  Plaintiff also did not plead facts showing that Defendant communicated an affirmative

misrepresentation or made misleading remarks directly to Plaintiff about the HSI.  The

boilerplate allegations that Defendant engaged in "fraudulent acts of concealment" and "refus[ed]

to disclose facts known to Defendant about the defect in the Hot Surface Igniter" are insufficient.

Compl. ¶ 19.  In the absence of supporting factual allegations, no tolling doctrine applies to

Plaintiff's unjust enrichment claim.

### 2.    Unjust Enrichment Barred as a Matter of Law

Alternatively, even if the unjust enrichment claim were not time-barred, Plaintiff has not

stated a claim as a matter of law because the relationship between the parties is governed by

contract.  "Under Pennsylvania law, 'the quasi-contractual doctrine of unjust enrichment [is]

inapplicable when the relationship between the parties is founded on a written agreement or

express contract.'" Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir.

1987) (quoting <u>Benefit Trust Life Ins. Co. v. Union Nat. Bank</u>, 776 F.2d 1174 (3d Cir. 1985)).

Where the claims "fall within the scope of those individual and separate agreements into which

[the parties] entered," "recovery is limited to the measure provided in the contract."  <u>Id.</u>  For

example, in <u>Ruthrauff, Inc. v. Ravin, Inc.</u>, 914 A.2d 880, 893 (Pa. Super. Ct. 2006), a heating

subcontractor whose contract with the general contractor included a limited warranty sued for

unjust enrichment.  <u>Id.</u> at 893.  The court held that the unjust enrichment claims stood only as to

work "performed outside any promises made in the written contractual documents."  <u>Id.</u>

Here, Defendant has attached the Limited Warranty to its Motion to Dismiss.  The Court

may consider the Limited Warranty as a document integral to the Complaint.  The Limited

Warranty governs the relationship between Plaintiff and Defendant concerning the purchase and

sale of the Furnace.  Because Plaintiff cannot state an unjust enrichment claim as a matter of law,

Count V is dismissed with prejudice.

### C.    Count VII: Breach of Duty of Good Faith and Fair Dealing

Plaintiff's claim that Defendant breached its duty of good faith and fair dealing also must

be dismissed because it does not state a valid cause of action.  Pennsylvania courts have found an

implied covenant of good faith and fair dealing stems from the Restatement (Second) of

Contracts § 205, which provides: "Every contract imposes upon each party a duty of good faith

and fair dealing in its performance and its enforcement."[3]  The Uniform Commercial Code

---

[3] The Supreme Court of Pennsylvania has not expressly adopted Section 205, although the
Pennsylvania Superior Court has done so.  <u>See</u> <u>Ash v. Cont'l Ins. Co.</u>, 932 A.2d 877, 883 n.2 (Pa.
2007); <u>Baker v. Lafayette College</u>, 504 A.2d 247, 255-56 (Pa. Super. Ct. 1986), <u>aff'd</u>, 532 A.2d
399 (Pa. 1987) (explaining that a defendant's "obligation to act in good faith extends only to the
performance of those contractual duties it has chosen to assume").

("U.C.C.") similarly contains an implied duty of good faith and fair dealing pursuant to 13 Pa. Cons. Stat. Ann. § 1203.  Somers v. Somers, 613 A.2d 1211, 1213 (Pa. Super. 1992) (the U.C.C. requires "[h]onesty in fact in the conduct or transaction concerned").  However, the courts generally apply "'the U.C.C.'s good faith requirements in aid and furtherance of the parties' agreement, not to override the parties' agreement for reasons of fairness, policy, or morality.'" Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 617 (3d Cir. 1995) (quoting Steven J. Burton, Symposium: The Revision of Article 2 of the Uniform Commercial Code : Good Faith in Articles 1 and 2 of the U.C.C.: The Practice View, 35 Wm. & Mary L. Rev. 1533, 1534 (1994)).  "[C]ourts generally utilize the good faith duty as an interpretive tool to determine the parties' justifiable expectations, and do not enforce an independent duty divorced from the specific clauses of the contract." Id. at 617 (citation and internal quotation marks omitted).  But see Creeger Brick & Bldg. Supply, Inc. v. Mid-State Bank & Trust Co., 560 A.2d 151, 153-54 (Pa. Super. Ct. 1989) (discussing that Pennsylvania recognizes a duty of good faith only "in limited situations," including between insurers and insured, and between franchisors and franchisees).

For example, in Duquesne Light, several electric utility companies brought claims against the defendant arising out of their contract for sale of nuclear steam supply systems, including a claim for breach of the duty of good faith and fair dealing.  Duquesne Light, 66 F.3d at 607.  The plaintiffs claimed they expected the nuclear steam supply systems would last 40 years, when in fact the contract contained an explicit and limited warranty for one to three years, depending on

certain circumstances.[4] Id. at 615.  The district court dismissed the breach of the duty of good

faith claim because the plaintiffs could not demonstrate that a good faith duty arose from any

contract provision.  Id. at 617.  The Third Circuit affirmed, holding that "[i]n the absence of a

dispute about the parties' reasonable expectations under a particular term of the contract," "we do

not believe that Pennsylvania courts would impose an independent duty of good faith not tied to

a contractual term."  Id. at 618.  The court rejected the plaintiffs' "attempts to read into the

contract a provision which it neither bargained for nor attained--a guarantee of 40 years" by

alleging that the defendant seller had a duty of good faith and fair dealing to provide a longer

warranty.  Id.

      Recently, several courts have held there is no independent cause of action for breach of a

duty of good faith and fair dealing under Pennsylvania law.  In Cummings v. Allstate Ins. Co.,

No. Civ. A. 11-02691, 2011 WL 2681517 (E.D. Pa. July 11, 2011) (Kelly, J.), the defendant

insurer contended that a breach of the duty of good faith and fair dealing was merely part of a

breach of contract claim.  Id. at *4.  Judge Kelly agreed, "hold[ing] that, under Pennsylvania law,

there is no separate cause of action for breach of the duty of good faith and fair dealing and that

such a claim is subsumed within a breach of contract claim."  Id. at *5 (dismissing with prejudice

claim for breach of the duty of good faith and fair dealing).  See also Zaloga v. Provident Life &

Accident Ins. Co. of Am., 671 F. Supp. 2d 623, 631 (M.D. Pa. 2009) (Kosik, J.) ((citing Birth

---

[4] The plaintiffs' cause of action for breach of warranty also failed, because "latent defects
discovered after the term of the warranty are not actionable."  Duquesne Light, 66 F.3d at 616
(citations and internal quotation marks omitted).

Center v. St. Paul Cos., Inc., 787 A.2d 376, 385-86 (Pa. 2001) ("there is no independent cause of action for a breach of the covenant of good faith and fair dealing-arising in contract-in Pennsylvania because such breach is merely a breach of contract."); LSI Title Agency, Inc. v. Evaluation Servs., Inc., 951 A.2d 384, 391 (Pa. Super. Ct. 2008) ("A breach of such covenant is a breach of contract action, not an independent action for breach of a duty of good faith and fair dealing.").

Until the Pennsylvania Supreme Court holds otherwise, this Court is inclined to conclude there is no independent cause of action for breach of a duty of good faith and fair dealing. However, even if such a cause of action exists under Pennsylvania law, Plaintiff's claim is barred by the terms of the parties' agreement. As in Duquesne Light, this case is governed by an express and limited warranty. Plaintiff cannot assert "breach of the duty of good faith and fair dealing" as a back-door attempt to extend the Limited Warranty beyond its one-year expiration date. See Duquesne Light, 66 F.3d at 616-18. Therefore, the Court will dismiss Count VII with prejudice.

### D.        Count I: Violation of Pennsylvania Consumer Protection Law

Plaintiff also alleges violations of the consumer protection laws in all the states and territories where members of the putative class resides. Because Plaintiff is a resident of Pennsylvania, the Court considers only whether he has stated a claim for violation of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. §§ 201-1 et seq.[5]

---

[5]  Plaintiff should have pled allegations on behalf of the putative class members separately from his own claims. Plaintiff must establish he has standing to bring his lawsuit, because "a plaintiff who lacks the personalized, redressable injury required for standing to assert claims on his own behalf would also lack standing to assert similar claims on behalf of a class." Holmes v. Pension

Plaintiff has not adequately stated a UTPCPL claim.  The UTPCPL "provides a private right of action for '[a]ny person who purchases. . . goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property' on account of the seller's unfair or deceptive acts or practices."  Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 564 (3d Cir. 2008) (quoting 73 Pa. Stat. Ann. § 201-9.2(a)).  "A plaintiff alleging deceptive conduct may proceed without satisfying the particularity requirement of Federal Rule of Civil Procedure 9(b)."  Vassalotti v. Wells Fargo Bank, N.A., 732 F. Supp. 2d 503, 511 (E.D. Pa. 2010) (Brody, J.) (citing Seldon v. Home Loan Serv., Inc., 647 F. Supp. 2d 451, 469-70 (E.D. Pa. 2009) (Yohn, J.).  Therefore, Rule 8, as interpreted by the Supreme Court in Iqbal, 129 S. Ct. at 1949, governs this claim.

Justifiable reliance is an element of any private plaintiff's cause of action under the UTPCPL.  Hunt v. U.S. Tobacco Co., 538 F.3d 217, 226 (3d Cir. 2008); Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004).  In Yocca, the plaintiffs, season ticket holders, sued the Pittsburgh Steelers under the UTPCPL for allegedly making false statements in its brochure concerning the sale of season tickets.  Id. at 427-432.  The Pennsylvania Supreme Court held that the plaintiffs did not state a UTPCPL claim because they had not pled "justifiable" reliance on any representations made prior to their entry into the purchasing agreement, which explicitly "superceded all of the parties' previous representations and agreements," including the brochure.  Id. at 439.  Because the plaintiffs' allegations did not

---

Plan of Bethlehem Steel Corp., 213 F.3d 124, 135 (3d Cir. 2000).

establish the element of justifiable reliance, the court affirmed the trial court's dismissal of the plaintiffs' UTPCPL claims.  Id.

In his response brief, Plaintiff clarifies that he has alleged a "claim under the UTPCPL's catchall provision, which prohibits deceptive conduct generally."  Pl.'s Mem. Law Opp'n 7.  To state a claim under the catchall provision, 73 Pa. Cons. Stat. § 201-2(4)(xxi), a plaintiff must allege three elements: (1) "facts showing a deceptive act, that is conduct that is likely to deceive a consumer acting reasonably under similar circumstances"; (2) "justifiable reliance, in other words that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the defendants' misrepresentation or deceptive conduct"; and (3) "that this justifiable reliance caused ascertainable loss."  Vassalotti, 732 F. Supp. 2d at 510-11 (quoting Seldon, 647 F. Supp. 2d at 470).  A plaintiff must plead facts alleging a specific deceptive act rather than a general failure to disclose information.

For example, in Vassalotti, the plaintiff mortgagor stated a UTPCPL claim against the defendant lender by alleging that the lender made specific misrepresentations in a letter about the loan modification program and in the loan modification agreement; that plaintiff relied on these terms in deciding to execute the agreement; and that her reliance caused her to suffer losses including increased monthly payments, late fees, and attempted foreclosure of her property.  Id. at 511 (denying motion to dismiss the UTPCPL claim).  By contrast, in Rubenstein v. Dovenmuehle Mortg., Inc., No. 09-721, 2009 WL 3467769 (E.D. Pa. Oct. 28, 2009) (Dalzell, J.), plaintiff homeowners alleged that the defendant mortgage company "failed immediately to disclose that they did not have plaintiffs' complete payment history" related to their mortgage

16

loan, but did not allege that the defendant committed any specific <u>deceptive</u> act, and thus failed

to state a claim. <u>Id.</u> at *6 (granting motion to dismiss the UTPCPL claim).

 Here, Plaintiff has not alleged justifiable reliance or a specific deceptive act by

Defendant.  Rather, the Complaint alleges generally that "by advertising and marketing the York

products in various media, including broadcasts, website and written promotional and other

materials, Defendants misled consumers about the efficacy of the Products."  Compl. ¶ 37.

Plaintiff also makes a legally conclusory allegation that "Defendants intentionally engaged in

these deceptive acts and made false or misleading representations, capable of causing Plaintiffs

and Class Members damages if Plaintiffs and/or the Class relied upon these representations."

Compl. ¶ 37.  However, Plaintiff has not pled any facts alleging that Defendant committed a

specific deceptive act related to the Furnace and/or the HSI component.  <u>See</u> <u>Rubenstein</u>, 2009

WL 3467769, at *6.  Plaintiff also has not alleged that he justifiably relied upon any specific

deceptive statements that caused him to suffer harm.  <u>See</u> <u>Yocca</u>, 854 A.2d at 439.  Therefore,

Plaintiff's existing factual allegations do not state a plausible UTPCPL claim.

 Additionally, although the Defendant did not raise the statute of limitations as to the

consumer protection claim, the Court concludes <u>sua</u> <u>sponte</u> that Plaintiff's UTPCPL claim is

probably time-barred.  "The statute of limitations for UTPCPL claims is six years."  <u>Drelles v.</u>

<u>Mfrs. Life Ins. Co.</u>, 881 A.2d 822, 831 (Pa. Super. Ct. 2005) (citing 42 Pa. Cons. Stat. Ann. §

5525(8)).  The "statute of limitations begins to run as soon as the right to institute and maintain a

suit arises, which generally is when the injury was inflicted."  <u>Id.</u> (citing <u>Fine v. Checcio</u>, 870

A.2d 850, 857 (Pa. 2005).  "'Mistake, misunderstanding, or lack of knowledge in themselves do

not toll the running of the statute,'" although the discovery rule and the doctrine of fraudulent

concealment may do so.  Id. (quoting Fine, 870 A.2d at 857).  However, as discussed in Section V.B.1, Plaintiff has not pled facts to show that either tolling exception applies to this case. Plaintiff's Complaint is deficient, and includes no facts between January 2005 and February 2010.

Accordingly, Count I will be dismissed without prejudice.  Although the Court doubts Plaintiff can plead a UTPCPL claim, the Court will grant Plaintiff the opportunity to amend his Complaint.

### E.    Count VI: Injunctive Relief

Lastly, Plaintiff's request for injunctive relief also fails to survive the motion to dismiss. "An injunction is 'an extraordinary remedy, which should be granted only in limited circumstances.'"  Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989)).  "Injunctive relief will lie where there is no adequate remedy at law."  Maritrans GP Inc. v. Pepper, Hamilton & Scheetz, 602 A.2d 1277, 1286 (Pa. 1992) (citation omitted).

Under Pennsylvania law, a party seeking injunctive relief "'must establish that his right to relief is clear, that an injunction is necessary to avoid an injury that cannot be compensated by damages, and that greater injury will result from refusing rather than granting the relief requested.'"  Kuznik v. Westmoreland County Bd. of Comm'rs, 902 A.2d 476, 489 (Pa. 2006)) (quoting Harding v. Stickman, 823 A.2d 1110, 1111 (Pa. Cmwlth. Ct. 2003).  In Boring v. Google, Inc., 598 F. Supp. 2d 695 (W.D. Pa. 2009) (Hay, M.J.), aff'd in part, rev'd in part on other grounds, 362 F. App'x 273 (3d Cir. 2010) (non-precedential), plaintiffs asserted numerous

claims under Pennsylvania law against Internet search engine Google, which allegedly had accessed and published photographs of their private property.  Id. at 698-99.  The district court dismissed all of the plaintiffs' other claims before dismissing the claim for injunctive relief, and then found that the plaintiff had not established a clear right to relief.  Id. at 704 ("Where not one of the other claims is sufficient to survive the Defendant's Motion to Dismiss, the assertion of a right to injunctive relief also fails.").  The Third Circuit affirmed the dismissal of nearly all of the claims, including the claim for injunctive relief.  Boring, 362 F. App.'x at 282 (reversing and remanding the trespass claim to the district court).

Here, as in Boring, Plaintiff has not alleged a valid cause of action for injunctive relief, because he has not established a clear right to relief.  Id.  None of Plaintiff's other claims have survived dismissal.  Furthermore, Plaintiff has not alleged why a damages remedy would not be adequate to compensate Plaintiff if Defendant bears any liability.  Because Plaintiff's existing factual allegations do not plausibly state a claim for injunctive relief, Defendant's motion to dismiss Count VI under Rule 12(b)(6) is granted without prejudice.[6]

## VI.    Conclusion

For the above reasons, Defendant's motion to dismiss will be granted with prejudice as to Counts II-V and VII, and without prejudice as to Counts I and VI.  If Plaintiff can allege

---

[6] Plaintiff should bear in mind if filing an Amended Complaint that the UTPCPL authorizes only the Attorney General and District Attorney, not a private plaintiff, to seek temporary or permanent injunctive relief against a defendant.  73 Pa. Stat. Ann. §201-4.  See also Weinberg v. Sun Co., Inc., 777 A.2d 442, 446 ("There is no authority which would permit a private plaintiff to pursue an advertiser because an advertisement might deceive members of the audience and might influence a purchasing decision when the plaintiff himself was neither deceived nor influenced.").

19

sufficient facts to overcome the deficiencies identified in this Memorandum, he may file an Amended Complaint.  If he files an Amended Complaint, Plaintiff should separate the class allegations pursuant to Fed. R. Civ. P. 23 from the allegations in support of his own claims.

An appropriate Order follows.


O:\CIVIL 11-12\11-1328 Goleman v. York\Goleman MTD Mem.wpd